UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA        )
                                           )
          vs.                       ) CAUSE NUMBER 3:05-CR-5(01)RM
                                           )
JOHN E. PARKER                )

OPINION AND ORDER

On November 16, 2004, law enforcement officers went to 629 E. Haney Street in South Bend in response to a report of a firearm being fired. The officers left with defendant John E. Parker, a spent 12-gauge shotgun shell found in a kitchen trash can, and a Westin Field 30/30 rifle found in the furnace in the basement. Everything else that happened at Haney Street turns on witness credibility.

The government's understanding of the facts is as follows: Ms. Linda Johnson, who lived at the Haney Street residence with Mr. Parker, told police that Mr. Parker had fired a sawed off shotgun toward her as she was leaving the home. Officers arrested Mr. Parker as he left the house's rear door, and placed him in the back of a police car. Ms. Johnson, shaken but rational, then told Officer Christopher Bortone and other officers to go into the house and get the gun, which she did not want in the house. She told the officers to look inside the furnace in the basement. Officers found the rifle inside the furnace, and found a shell casing in the kitchen trash can. They found no shotgun at the home, but learned later that the shotgun had been hidden in a floor vent.

Mr. Parker disagrees with each of those proposed facts except for his own

arrest and the officers' discovery of the rifle and the shell casing. His understanding is that the police entered the Haney Street home without consent, warrant, or exigency. He relies principally upon the testimony of Ms. Johnson, who denies having given any consent to search on November 16.

Ms. Johnson's credibility as a witness was modest, perhaps because her answers often were ill-matched to the question, without regard to which attorney posed the question. She testified that she didn't tell the police they could search the house, but she concedes that she might have told them to look in the furnace; the court struggles to imagine a set of circumstances consistent with Ms. Johnson's scenario under which both could be true. She testified that she had been gone from the home for a matter of hours, that she didn't call the police, and that she found the police in her home when she returned. She testified that the police asked her, as she stood on her front porch (apparently after Mr. Parker's arrest), whether anyone else was in the house and she said her partially blind brother was upstairs. She testified that the police then brought her brother to the front porch and re-entered the home. The court understands Ms. Johnson to have said that she didn't enter the house while the police were there. Perhaps it is because of the disharmony between the answers Ms. Johnson gave and the questions that were put to her, but the court cannot square that chronology with her having told the police to look for the gun in a furnace in the basement.

Ms. Johnson only grudgingly conceded that Mr. Parker had, while held at the county jail after the November arrest, told her where the shotgun could be

found (in a basement floor vent) and asked her to dispose of it. She seemed (to the court) to waffle when asked whether she had planned to have Willis Bedford dispose of the shotgun, which was not in the vent when the police returned to look for it in January.

Officer Bortone was the only other witness at the suppression hearing who was present at the Haney Street residence on November 16. He testified that after assisting with Mr. Parker's arrest, he spoke with Ms. Johnson. He described Ms. Johnson as very shaken, crying, and very upset. He testified that she told the officers that she was leaving the house's rear door when she heard a "click" and a loud bang she believed was a gunshot. Officer Bortone testified that Ms. Johnson said Mr. Parker had been behind her with a sawed-off shotgun. It was at this point, Officer Bortone says, that Ms. Johnson told the officers to enter the house and get rid of the gun. He testified that she went into the house with them, though she didn't go to the basement with them after she told them to look in the basement.

Officer Bortone's testimony finds some corroboration in the testimony of Sgt. Carl Karch who (though not present on November 16) interviewed Ms. Johnson in January. Ms. Johnson told Sgt. Karch that she believed Mr. Parker had fired at her. When Sgt. Karch asked specifically whether Ms. Johnson saw him do so, she said she did not, but gave an explanation much like the one Officer Bortone attributes to her on the night of the search. And although (as already noted) the contours of Ms. Johnson's chronology are hazy at best, it's hard to pinpoint when

she might have made that statement to the officers on the night of November 16 if they were already searching the house when she arrived. Finally, Officer Bortone's testimony makes sense. It seems reasonable that one who had just experienced what Ms. Johnson described to Sgt. Karch would be quite upset and would want the gun removed from the home she shared with Mr. Parker.

For all these reasons, the court finds that Officer Bortone's testimony is more accurate than that of Ms. Johnson, and finds that Ms. Johnson consented to (indeed, commanded) the search of 629 East Haney Street on November 16, 2004. Since Ms. Johnson was a co-tenant of the residence searched, her consent makes the search reasonable, United States v. Aghedo, 159 F.3d 308, 310-311 (7th Cir. 1998), United States v. Ladell, 127 F.3d 622, 624 (7th Cir. 1997), and the court DENIES Mr. Parker's motion to suppress [docket no. 13].

SO ORDERED.

ENTERED: April 11, 2005

_____/s/ Robert L. Miller, Jr._____
Chief Judge
United States District Court

cc:   J. Parker
      J. Stevens
      J. Maciciejczyk

4